# Case No. 21-17062

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

⸻

ATARI INTERACTIVE, INC.,
*Plaintiff-Appellant,*

v.

REDBUBBLE, INC.,
*Defendant-Appellee.*

─────────────────────

*Appeal from the United States District Court for the Northern District of California (Oakland),*
*Case No. 4:18-cv-03451-JST · The Honorable Jon S. Tigar, District Judge*

## APPELLANT'S OPENING BRIEF

KEITH J. WESLEY
CHRISTOPHER W. ARLEDGE
MATTHEW L. VENEZIA
ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
2121 Avenue of the Stars, Suite 3000
Los Angeles, California 90067
(310) 274-7100 Telephone
(310) 275-5697 Facsimile
kwesley@egcfirm.com
carledge@egcfirm.com
mvenezia@egcfirm.com

GEORGE B. A. LAIOLO
ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
44 Montgomery Street, Suite 1280
San Francisco, California 94104
(415) 391-7100 Telephone
(415) 391-7198 Facsimile
glaiolo@egcfirm.com

*Attorneys for Plaintiff-Appellant Atari Interactive, Inc.*



## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-

Appellant certifies that Atari SA (France) is its corporate parent.

Dated:  June 27, 2022          Respectfully submitted,

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
    Keith J. Wesley
    Christopher W. Arledge
    Matthew L. Venezia
    George B. A. Laiolo


By:   */s/ Matthew L. Venezia*
    Matthew L. Venezia
Attorneys for Plaintiff-Appellant
Atari Interactive, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iv

INTRODUCTION ............................................................................... 1

JURISDICTION ................................................................................. 7

ISSUES PRESENTED FOR REVIEW ...................................................... 8

ADDENDUM OF PERTINENT STATUTES (NINTH CIRCUIT RULE 28-2.7) ............................................................................. 9

CASE, FACTS AND PROCEDURAL SETTING ....................................... 9

    I.    Atari's Allegations Against Redbubble .................................... 9

    II.   The Record Through Summary Judgment ............................ 11

         A.   Despite the facts being undisputed, the Court found a triable issue of fact as to Redbubble's direct liability ................................................................ 11

         B.   The Court holds that Redbubble is not willfully blind as a matter of law, undercutting Atari's contributory infringement and willfulness claims ...... 18

    III.  Jury Trial on Redbubble's Direct Liability for Infringement ................................................................... 24

         A.   The district court improperly excluded evidence of Redbubble's role as seller ......................................... 24

         B.   The district court gave jury instructions that materially misstated the requirements for trademark use, and refused to give instructions concerning what constitutes a seller ............................ 25

         C.   At trial, Atari entered evidence again demonstrating Redbubble's role as the seller of counterfeit Atari products ........................................................................ 27

         D.   Called to make a policy determination as to whether Redbubble should be liable, the jury found in Redbubble's favor ........................................... 30

STANDARD OF REVIEW ........................................................ 30

SUMMARY OF THE ARGUMENT ......................................... 32

ARGUMENT .......................................................................... 37

I.    The Court Erroneously Granted Summary Judgment
on the Issue of Willful Blindness, Disallowing Atari's
Operative Theory of Contributory Infringement and
Willfulness Claims ................................................ 37

    A.    Legal standard .......................................... 37

    B.    Analysis ..................................................... 37

        1.    Redbubble subjectively believed that
infringement was occurring on its website ......... 40

        2.    Redbubble stuck its head in the sand
instead of taking reasonable steps to avoid
infringement ......................................... 42

            a.    Redbubble enacted a formal policy of not
searching its website for infringements .... 42

            b.    Redbubble fails to take reasonable steps
to stop infringement on its website ........... 45

    C.    Summary .................................................... 47

II.    The District Court Repeatedly Erred in Regard to
Atari's Direct Infringement Claims ...................... 47

    A.    "Use in commerce" under the Lanham Act is
broader than selling or offering for sale ...................... 48

    B.    The district court should have granted Atari
summary judgment on liability ................................... 52

    C.    The district court materially misstated the law
when instructing the jury ........................................... 55

        1.    The district court erred by limiting "use in
commerce" under the Lanham Act to selling
or advertising ...................................................... 56

2. The district court erred by refusing to instruct the jury on what it means to be a seller ................................................................ 58

D. The district court improperly excluded key evidence of Redbubble's role as seller ......................... 60

E. Summary ................................................................ 61

CONCLUSION ................................................................ 62

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a) AND NINTH CIRCUIT RULE 32-1 ................................................................ 63

STATEMENT OF RELATED CASES ................................................................ 64

ADDENDUM OF PERTINENT STATUTES

CERTIFICATE OF SERVICE AND CM/ECF FILING

# TABLE OF AUTHORITIES

**CASES**                                                          **Page(s)**

*Adobe Sys. Inc. v. Blue Source Group, Inc.*,
    125 F. Supp. 3d 945 (N.D. Cal. 2015) ...................................... 52, 57

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................. 30

*Banuelos v. Constr. Laborers' Tr. Funds for S. Cal.*,
    382 F.3d 897 (9th Cir. 2004) ................................................... 55

*Born to Rock Design Inc. v. CafePress.com, Inc.*,
    No. 10 Civ. 8588(CM), 2012 WL 3954518
    (S.D.N.Y. Sep. 7, 2012) ........................................................... 51

*Clem v. Lomeli*,
    566 F.3d 1177 (9th Cir. 2009) ................................................. 31

*Coach, Inc. v. Goodfellow*,
    717 F.3d 498 (6th Cir. 2013) ............................................... 38, 45

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) ................................................... 31

*Engquist v. Oregon Dep't of Agriculture*,
    478 F.3d 985 (9th Cir. 2007) ................................................... 32

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
    76 F.3d 259 (9th Cir. 1996) ..................................................... 39

*Friedman v. Live Nation Merch., Inc.*,
    833 F.3d 1180 (9th Cir. 2016) ........................................ 4, 34, 37

*Global–Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ................................................................. 39

*H–D U.S.A., LLC v. SunFrog, LLC*,
    311 F. Supp. 3d 1000 (E.D. Wis. 2018) ............................ 3, 35, 51

*In re Bard IVC Filters Prod. Liab. Litig.*,
    969 F.3d 1067 (9th Cir. 2020) ................................................. 55

*Innovation Ventures, LLC v. Ultimate One Distrib Corp.*,
    176 F. Supp. 3d 137 (E.D.N.Y. 2016) ................................... 50, 57

*Interstellar Starship Servs., Ltd. v. Epix Inc.,*
    184 F.3d 1107 (9th Cir. 1999) .................................................... 30, 31

*JUUL Labs, Inc. v. Chou,*
    557 F. Supp. 3d 1041 (C.D. Cal. 2021) .............................. 35, 50, 57

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.,*
    658 F.3d 936 (9th Cir. 2011) ........................................................ 40

*Luvdarts, LLC v. AT&T Mobility, LLC,*
    710 F.3d 1068 (9th Cir. 2013) ................................................. 38, 39

*N. Amer. Med. Corp. v. Axiom Worldwide, Inc.,*
    522 F.3d 1211 (11th Cir. 2008) .................................................... 51

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.,*
    671 F.3d 526 (5th Cir. 2012) ........................................................ 49

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,*
    638 F.3d 1137 (9th Cir. 2011) ...................................................... 50

*Nike, Inc. v. E. Ports Custom Brokers, Inc.,*
    No. 2:11-CV-4390-CCC-MF, 2018 WL 3472628
    (D.N.J. July 19, 2018)............................................................ 50, 57

*Ohio State University v. Redbubble, Inc.,*
    989 F.3d 435 (6th Cir. 2021) ................................................. 51, 57

*Omega SA v. 375 Canal, LLC,*
    984 F.3d 244 (2d Cir. 2021)............................. 38, 39, 40, 41, 43, 45

*Pau v. Yosemite Park & Curry Co.,*
    928 F.2d 880 (9th Cir. 1991) ........................................................ 32

*Philip Morris USA, Inc. v. Lee,*
    481 F. Supp. 2d 742 (W.D. Tex. 2006 ..................................... 50, 57

*Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.,*
    No. CV 08-0068 (KAM) (JO), 2010 WL 2133937
    (E.D.N.Y. Mar. 11, 2010)............................................................. 50

*Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib. Pty. Ltd.,*
    647 F.2d 200 (D.C. Cir.1981) ....................................................... 52

*Tiffany (NJ) Inc. v. eBay Inc.,*
    600 F.3d 93 (2d Cir. 2010)...................................................... 38, 40

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011) .................................................. 52, 57

*Transamerica Corp. v. Moniker Online Servs., LLC*,
    672 F. Supp. 2d 1353 (S.D. Fla. 2009) ........................................ 51

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) ..................................................... 42

## STATUTES AND RULES

15 U.S.C. § 1051 ............................................................................... 7

15 U.S.C. § 1114 ..................................................... 9, 35, 48, 49

15 U.S.C. § 1125 ................................................................... 9, 48

28 U.S.C. § 1331 ............................................................................... 7

28 U.S.C. § 1338 ............................................................................... 7

28 U.S.C. § 1367 ............................................................................... 7

U.C.C. § 2-105 ............................................................................... 58

Cal. Rev. and Tax Code § 6203 ............................................... 16

Fed. R. App. P. 4 ............................................................................ 8

Fed. R. App. P. 28-2.7 ................................................................. 9

## OTHER AUTHORITIES

J. Thomas McCarthy, McCarthy On Trademarks and Unfair
    Competition (5th ed.) ........................................................... 49

# **INTRODUCTION**

Redbubble operates a "print-on-demand" website, meaning that Redbubble's users upload designs to the Redbubble website, and Redbubble offers for sale products printed with those designs. In other words, other than uploading the designs that end up on Redbubble products, Redbubble handles everything else related to the transaction. Redbubble:

- lists the products for sale on its website,

- markets the products,

- processes the orders and receives payment,

- hires printing partners to manufacture the products,

- arranges shipment of the products in Redbubble packaging with Redbubble tags, and

- handles all customer service including returns.

None of this has ever been disputed.

Nor has it been seriously disputed that through this process, hundreds of different products bearing copies of Atari's federally registered ATARI® and PONG® marks have been offered for sale and

sold on Redbubble's website. Some examples from Atari's Complaint are provided below.



Faithful application of well-established anti-counterfeiting and trademark infringement laws leads here to one inescapable conclusion: Redbubble is liable for counterfeiting where products bearing copies of

the federally registered ATARI® and PONG® marks were sold through www.redbubble.com. Redbubble is also liable for contributory infringement because Redbubble turns a blind eye to infringements of well-known brands like Atari on its website; Atari offered evidence that Redbubble is the worst violator of intellectual property rights in the industry.

The district court made a number of reversible errors—first in granting Redbubble partial summary judgment and then in presiding over a jury trial that ended in a verdict in favor of Redbubble.

*First*, at the summary judgment stage, despite the facts concerning Redbubble's role in the manufacturing and distribution process being entirely undisputed, the district court refused to rule as a matter of law that Redbubble's conduct amounts to trademark use under the Lanham Act. *Cf. H–D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1023, 1050 (E.D. Wis. 2018) (granting summary judgment on direct liability and holding that similar facts involving an online print-on-demand company present "a fairly straightforward case of counterfeiting"). The district court went so far as to rule that, as a matter of law, Redbubble's customers enter into sales contracts with

Redbubble when purchasing the infringing products on Redbubble's website. However, despite there being no disputed facts whatsoever, the district court asked a jury to determine whether Redbubble "used" Atari's trademarks in violation of the law.

*Second*, also at the summary judgment stage, the district court summarily ruled, as a matter of law, that Redbubble does not engage in willful blindness as to the wide-scale infringement on its website, gutting Atari's contributory infringement claim. This ruling violated Ninth Circuit precedent holding that issues of state-of-mind are generally inappropriate for resolution on summary judgment. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016). It also ignored significant evidence that Redbubble does in fact engage in willful blindness. For example:

- Redbubble's policy stating that even after Redbubble receives a takedown notice from a rights holder, they "generally don't go looking for similar works to remove from the marketplace." 9-ER-1913, ¶ 27.

- Evidence that even after receiving thousands upon thousands of takedown notices, obvious counterfeits of every

well-known brand one can think of remained for sale on Redbubble's website.

- Redbubble's own study concluded that 24% of the products offered for sale on its website are "inauthentic."

- Evidence that Redbubble fails to suspend users it knows are engaging in infringement, allowing hundreds of users three or more infringement complaints, and one user *34* infringement complaints, without suspension.

- Expert testimony that Redbubble is the worst offender of intellectual property rights in the print-on-demand industry.

Considering this evidence, a reasonable juror *could* have found Redbubble willfully blind.

***Third***, the district court made a number of errors during trial on Atari's direct liability claims. The district court modified the model jury instructions to instruct the jury it must decide whether Redbubble or Redbubble's users are the *true* seller, foreclosing the possibility that both Redbubble and its users could engage in direct infringement: "If you find that Redbubble's role was instead to act as an intermediary, or

as a facilitator of sales made by others, you may not find that Redbubble 'used' the plaintiff's mark." 1-ER-7.

Moreover, despite tasking the jury with deciding whether Redbubble or its users act as the seller, the district court refused to instruct the jury as to how to make such a determination. Atari offered a proposal based on applicable contract law, but the district court declined to give any instruction, reasoning that "one judge sifting through a bunch of nonoverlapping legal references the night before finalizing the instructions didn't seem to me the right way to go about it." 10-ER-2288–2289.

The district court also erroneously excluded from trial Redbubble's own admissions that it acts as the seller of products on its website for tax and accounting purposes. This compounded the harm caused by the above-described erroneous instructions, and left the jury without guidance on how to determine whether Redbubble acted as a seller. Instead, the district court left that legal issue in the jury's hands, guided only by the following policy question: Who is *more* at fault for the infringement on Redbubble's website—Redbubble or its users? That error compels reversal.

In summary, the district court should have granted Atari summary judgment on the issue of direct liability; alternatively, erroneous jury instructions require a new trial on this issue. Additionally, the Court should reverse the ruling that Redbubble does not engage in willful blindness as a matter of law, and if the Court believes a trial on liability is still required, Atari should be allowed an opportunity to try its willful blindness-based contributory infringement claims. In either scenario, because a reasonable jury could find Redbubble to be willfully blind, Atari must also be allowed to pursue a finding that Redbubble's counterfeiting is willful.

## **JURISDICTION**

This is a trademark counterfeiting case asserting claims under the Lanham Act, 15 U.S.C. §§ 1051, et seq., in addition to a common law unfair competition claim under California law. The district court had jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1338, and supplemental jurisdiction over the California law claim pursuant to 28 U.S.C. § 1367.

On November 18, 2021, the district court entered final judgment in favor of Redbubble. 1-ER-2–5. On December 15, 2021, pursuant to

Federal Rule of Appellate Procedure 4(a)(1)(A), Atari timely filed its Notice of Appeal seeking review of the district court's rulings on summary judgment, and jury instructions and evidentiary rulings at trial. 10-ER-2363–2424.

## **ISSUES PRESENTED FOR REVIEW**

1.    Did the district court err in refusing to grant Atari's motion for summary judgment on Redbubble's liability for direct trademark counterfeiting, where Atari set forth a prima facie case of the same, and there were no disputed material facts?

2.    Did the district court err in ruling that Redbubble does not engage in willful blindness as a matter of law, where Atari presented evidence that Redbubble (1) had knowledge of widespread infringement on its platform, and (2) failed to take reasonable steps to avoid the infringement?

3.    Did the district court err in modifying Model Jury Instruction 15.6 to require that Atari demonstrate Redbubble acts as the lone seller of infringing goods to be directly liable, and by further instructing the jury that no amount of facilitation of a sale by another can amount to trademark use?

4. Did the district court err in refusing to provide the jury any instruction as to how to determine who is the seller under the Lanham Act, where the modified Model Jury Instruction 15.6 expressly required the jury to determine whether Redbubble or its users was the seller?

5. Did the district court err in excluding from trial Redbubble's admissions, made in public filings, that Redbubble acts as the seller for sales transactions made on its website for accounting and tax purposes, where the jury was required to determine whether Redbubble acts as a seller?

## ADDENDUM OF PERTINENT STATUTES (NINTH CIRCUIT RULE 28-2.7)

Pursuant to Ninth Circuit Rule 28-2.7, appended hereto Plaintiff-Appellant includes verbatim copies of 15 U.S.C. §§ 1114, 1125.

## CASE, FACTS AND PROCEDURAL SETTING

## I. Atari's Allegations Against Redbubble.

Atari—the pioneering brand behind the Atari 2600 home video gaming console and classic games like *Pong* and *Centipede*—alleged that Redbubble engaged in wide-scale counterfeiting of Atari's federally registered ATARI® and PONG® marks (the "Atari Marks"). 9-ER-2049. In support of this allegation, Atari attached to its Complaint

screenshots showing hundreds of products bearing clear copies of the Atari Marks, listed for sale on Redbubble's website. 10-ER-2148–2256. Among other claims, Atari brought claims for willful direct and contributory trademark counterfeiting. 9-ER-2050–2058.

Atari acknowledged that Redbubble users uploaded the counterfeit designs to Redbubble's website, but alleged that Redbubble did everything else. Redbubble displayed the counterfeit designs on final product images, manufactured and shipped the counterfeit products, and processed the payments. 9-ER-2049. With the minor distinction that Redbubble hired and paid third parties to print the physical products, as explained below, these core facts remained undisputed through trial.

In support of its claims that Redbubble's infringement was knowing and willful, Atari noted the large quantity of products displaying exact copies of the Atari Marks, and other well-known marks. 9-ER-2050, ¶ 19; 10-ER-2148–2256. In other words, Atari alleged that unless Redbubble was willfully blind, it must have had knowledge of its massive infringement problem.

## II.    The Record Through Summary Judgment.

Following discovery, the parties filed cross-motions for summary judgment. 3-ER-341–375. Atari sought a determination that, among other things, Redbubble was liable on theories of direct and contributory trademark counterfeiting, and Redbubble sought dismissal of Atari's claims. 3-ER-343–375.

### A.    Despite the facts being undisputed, the Court found a triable issue of fact as to Redbubble's direct liability.

On summary judgment, Atari set forth a prima facie case of direct trademark infringement. That is, Atari proved the Atari Marks were federally registered, valid, and protectable, and sought summary judgment "only as to those products [sold through Redbubble's platform] that contained identical" or substantially indistinguishable copies of those marks. 3-ER-365. Atari also provided the following evidence that Redbubble uses the Atari Marks, none of which was disputed on summary judgment:

Redbubble operates a print-on-demand website where Redbubble users upload designs onto the Redbubble website, and customers can purchase items like t-shirts printed with those designs. 3-ER-474, 490–92. Redbubble does not maintain stock of the items listed for sale on its

website, but instead hires a third-party printer to manufacture the particular product when ordered—*i.e.* "on-demand." 3-ER-475–76.

Once a Redbubble user uploads a design, that design is virtually affixed by Redbubble onto Redbubble's model photos, and is then hosted on Redbubble's website in a product listing. *See, e.g.*, 9-ER-1882–95, 2020–44. A sample product listing hosted on Redbubble's website is below:



2-ER-171–74.

This particular listing utilizes an exact copy of the ATARI® mark, and was located by Atari during the summary judgment briefing—*i.e.*, over a year after the filing of the lawsuit. *Id.* This listing was tagged with the key word "atari" and was thus easily locatable using Redbubble's search function, but Redbubble failed to remove this counterfeit product. 2-ER-173. The listing has the Redbubble logo at the top left, and describes the t-shirt the design is to be printed on, representing it as "ethically sourced," among other things. 2-ER-172. Lastly, the listing states that it was "designed by" (*not* sold by) one of Redbubble's users. *Id.*

When a customer decides to purchase an item, they can do so by adding the item to his or her shopping cart, and checking out on the Redbubble website. 3-ER-480, 482; 9-ER-1997, ¶¶ 2, 5. Redbubble processes the payment itself (*i.e.*, takes the money) and provides an order confirmation, accepting the customer's offer to purchase the item. 3-ER-480, 482; 9-ER-1997–98, ¶¶ 5, 7; 9-ER-2014–19. A sample order confirmation is below.



9-ER-2014–16. Notably, this screenshot shows the next two steps—
"Made and Shipped" and "Est. Shipping"—on a page that only
references Redbubble.

Next, the customer will receive a shipping confirmation from
Redbubble, and Redbubble coordinates shipping through carriers like
FedEx and UPS. 3-ER-475–77; 9-ER-1997, ¶ 3; 9-ER-2002–10. When
the order arrives, it will be in a Redbubble shipping container, with the
products placed in individual Redbubble bags. 3-ER-358, 483–85; 9-ER-
1997–98, ¶¶ 4, 8; 9-ER-2011–13. The products will also have a

removable Redbubble tag. 3-ER-358, 483–85; 8-ER-1653–55.

Representative samples of this packaging are below.



Should there be an issue with the product, the tag advises the customer

to contact Redbubble concerning returns, and in fact, Redbubble

handles all returns/refunds and customer service issues. 3-ER-475, 481,

485–486, 492.

Acknowledging its role as seller, Redbubble's public filings concede

Redbubble's role as a "seller" of goods that collects and remits sales

taxes to the state of California pursuant to California Revenue and Tax

Code Section 6203(a).[1] 4-ER-502; 7-ER-1560. Further, in its annual

---

[1] This provision requires that "every retailer engaged in business in this
state and making sales of tangible personal property . . . shall, at the
time of making the sales . . . collect the tax from the purchaser[.]"

report, Redbubble conceded that Redbubble is the principal in the sales transactions made on its website, Redbubble explaining:

> [Redbubble] has concluded that when the customer contracts with [Redbubble], there is only one performance obligation for goods bearing the artists' designs. Both the artist and [Redbubble] are involved in satisfying the performance obligation. However, as [Redbubble] controls a substantial part of the process it is construed to be the party primarily responsible for satisfying the performance obligation, [Redbubble] is determined (for accounting purposes) to be the principal in the sale.

4-ER-542.

Again, Redbubble did not and does not dispute any of these facts. But, despite the undisputed nature of the record, the district court refused to make a call as to whether the above-described conduct is sufficient to constitute trademark use under the Lanham Act. The district court did rightly hold that it is Redbubble that enters into sales contracts with customers when a product is purchased on Redbubble's website, stating, "Atari's evidence shows that the customer forms a contract with Redbubble, not the artist." 1-ER-40. Nonetheless, instead of finding Redbubble directly liable for the infringements on its website, the district court punted:

Here, while there is something much more than
"no evidence" that Redbubble acts as a seller,
Atari has not established that Redbubble is a
seller as a matter of law.

1-ER-42. The district court denied both parties' motions for summary

judgment on Redbubble's direct liability, and despite the lack of any

disputed factual issues, sent the issue to a jury for determination

whether Redbubble should be found a seller. 1-ER-60–61.

**B.** **The Court holds that Redbubble is not willfully blind as a matter of law, undercutting Atari's contributory infringement and willfulness claims.**

Atari submitted an abundance of evidence on summary judgment

establishing that Redbubble either had actual knowledge of, or was

willfully blind to, the wide-scale infringement on its website. To

summarize:

- Redbubble's 2019 Annual Report stated that 76% of

  Redbubble's sales originate from "authentic sellers", showing

  Redbubble's knowledge that the other 24% of sales come

  from inauthentic sellers. 4-ER-540–41.[2]

---

[2] Another chart proposed to be filed under seal shows Redbubble
tracking what percentage of sales related to a certain subset of
intellectual properties were later "moderated"—Redbubble language
indicating the items were flagged as infringing. 12-ER-2683–84.

- Redbubble employed approximately 10–15 employees tasked with responding to letters from third-parties asserting that infringing products were being sold on Redbubble's website. 7-ER-1497.

- Counterfind (a service that tracks IP-infringing listings online) alone reported to Redbubble more than 30,000 separate infringing products listed for sale on Redbubble's website, on behalf of its clients. 9-ER-1912, ¶ 24.

- Redbubble was the target of multiple infringement lawsuits, having been found liable for infringement in cases filed by the Hells Angels and Pokémon in Australia. 4-ER-585–714; 5-ER-716–97.

- As early as 2011, Atari sent Redbubble a cease and desist letter concerning infringement of an Atari-owned property (*Centipede*) on Redbubble. 3-ER-337–40.

- Redbubble fielded customer service inquiries concerning the counterfeit Atari products offered for sale on its website. See 3-ER-287–91.

Indeed, counterfeits of any well-known brand one can think of are

readily available for sale on Redbubble:

  

  

  

8-ER-1774–1834.

Atari also submitted evidence demonstrating that it was

Redbubble's policy to not search for infringements at all, unless the

infringements were particularly identified in a takedown notice

received from a rights holder. Redbubble's website states:

> It is Redbubble's policy to remove allegedly
> infringing works in response to valid complaints
> under applicable law, but content is only removed
> when it has been specifically identified as
> infringing in a legally valid takedown notice. We
> generally don't go looking for similar works to
> remove from the marketplace.

9-ER-1913, ¶ 27. Evidencing this "we simply do not look" approach,

Redbubble's in-house counsel—tasked with overseeing intellectual

property matters—testified that he has never reviewed the Redbubble

website and located a counterfeit. 4-ER-505. Further, Atari's expert

explained, "I have personally not witnessed any first hand 'proactive

policing' by Redbubble in any instances." 9-ER-1916, ¶ 37.[3]

---

[3] Redbubble has attested that in some instances it does "proactive
policing" where it has reached an agreement with a particular rights
holder. Atari's contrary evidence must be credited on summary
judgment, but the point remains: Absent a complaint from the rights
holder, Redbubble will do *nothing* to address infringement, no matter
how obvious.

Moreover, Atari provided evidence demonstrating that Redbubble abjectly fails to take reasonable steps to avoid allowing infringement on its website:

- Redbubble fails to promptly ban the users selling products subject to takedown notices. Counterfind observed:

  The number of times that a seller on Redbubble had to be reported more than once, prior to account suspension, ranged from two to 34 unique reports to Redbubble. I found that 412 sellers were reported three or more times, and 195 sellers were reported four or more times. There were 125 sellers that were reported five or more times and 93 sellers reported six or more times.

  9-ER-1916, ¶ 36.

- Unlike other print-on-demand websites, Redbubble refuses to block the use of well-known trademarks or intellectual properties as key words, allowing customers to easily locate knockoffs. 4-ER-514–16; 9-ER-1915, ¶ 32.

- Even with Redbubble being in active litigation with Atari, until trial neared, Atari continued to find blatant infringements of its intellectual property for sale on Redbubble, including a t-shirt bearing a counterfeit Atari

mark, that was tagged with "atari logo". *See, e.g.*, 2-ER-171–94; 3-ER-196–224.

- Redbubble takes six days on average to process a takedown request, where its competitors process the same types of complaints with 24–48 hours. 9-ER-1914, ¶¶ 30–31.

- Atari presented expert testimony that "Redbubble is one of the worst violators when it comes to policing their marketplace for intellectual property infringements when compared to other print-on-demand sites." 9-ER-1913, ¶ 25.

The district court nonetheless dismissed Atari's willful blindness theory. That is, the district court first granted summary judgment on Atari's contributory copyright infringement claim, ruling that Redbubble was not willfully blind as a matter of law. 1-ER-56–57. In a supplemental order, the district court clarified that this ruling also applied to Atari's trademark claims. 1-ER-22–23. Without discussion of the contradictory evidence cited above, the district court credited Redbubble's self-serving declaration that it "proactively screens for infringing content based on information it receives from content owners" to find Redbubble's actions reasonable as a matter of law, 1-

ER-47–48, essentially granting Redbubble a free pass to counterfeit any well-known mark it desires until such time as Redbubble is caught by the rights holder.

Because this ruling disallowed Atari's operative theory of contributory infringement, the parties stipulated that Atari would not present contributory infringement claims at trial, but that "Atari reserves its appellate rights as to its contributory infringement claims based upon Judge Tigar's rulings on willful blindness." 2-ER-97.

## III. <u>Jury Trial on Redbubble's Direct Liability for Infringement.</u>

### A. <u>The district court improperly excluded evidence of Redbubble's role as seller.</u>

Redbubble moved to exclude from trial evidence of Redbubble's own concessions that it acts a seller for tax and accounting purposes. 2-ER-101–06. Despite tasking the jury with determining whether Redbubble is a seller, the district court granted Redbubble's motion, and excluded from trial Redbubble's own admissions on the topic. 1-ER-15–16.

**B.** **The district court gave jury instructions that materially misstated the requirements for trademark use, and refused to give instructions concerning what constitutes a seller.**

Set to try the issue of whether Redbubble is liable for direct trademark infringement, Atari requested the district court give Ninth Circuit Model Civil Jury Instruction 15.6—setting forth the elements for a claim of trademark infringement. 2-ER-71–74. Redbubble proposed material modifications to this instruction, seeking to insert this additional language:

> You may find that Redbubble "used" the plaintiff's mark only if you find that Redbubble itself either: (1) was the seller of any infringing goods; (2) was the one offering any allegedly infringing goods for sale; or (3) advertised any allegedly infringing goods through advertisements that themselves infringed the plaintiff's trademarks. If you find that Redbubble's role was instead to act as an intermediary, or as a facilitator of sales made by others, you may not find that Redbubble "used" the plaintiff's mark.

2-ER-85–88. The district court deviated from the model instructions and gave Redbubble's proposed instruction. 1-ER-7. The given instruction erroneously instructed the jury that (1) they must make a determination between Redbubble and its users as to who is the one true seller, and (2) no amount of facilitation can amount to trademark

25

use. Importantly, having repeatedly decided to put the question of whether Redbubble is a seller in the jury's hands, the district court refused to provide the jury with any instruction as to how to make that determination. Atari requested the following instruction, based upon applicable contract law:

> Atari alleges the buyer of an item on Redbubble's website forms a contract for a sale with Redbubble when the buyer orders an item on Redbubble's website. A person who contracts with a buyer to deliver title of a product is the seller of that product.

2-ER-75–81. Redbubble objected to this instruction, and Atari responded to that objection, *i.e.*, full briefing was submitted to the district court on this requested instruction. *Id.*

Despite the importance of the issue to trial, and the fact that it was one of the only disputed issues remaining in the case after summary judgment, the district court refused to provide *any* instruction on Redbubble's status as a seller. Instead, the district court stated:

> "I'm not going to provide a separate instruction on whether Redbubble is a seller. Very interesting issue. But I just didn't think the issue was legally well enough developed in the papers that I had to give the jury an instruction with confidence.

> I think, as Ms. Durie said in her opening statement, in some ways, this trial is a referendum on Redbubble's business model, although Redbubble has engaged in more than one litigation about this. And so—and I—I agree that the law in that area needs to be developed.
>
> But one judge sifting through a bunch of nonoverlapping legal references the night before finalizing the instructions didn't seem to me the right way to go about it. So I'm just not going to give the jury an instruction."

10-ER-2288–2289. In other words, instead of instructing the jury as to how to determine an important factual issue, the district court decided to submit the issue to the jury with no guidance, *such that the jury could decide what it thinks the law should be.*

## C. **At trial, Atari entered evidence again demonstrating Redbubble's role as the seller of counterfeit Atari products.**

At trial, the parties stipulated that Atari owned the Atari Marks. 2-ER-67–69, 10-ER-2299–2300. It was also not contested that products bearing the Atari Marks were listed for sale on Redbubble's website (10-ER-2276–2278, 2301–2360), and that Redbubble sold some of those designs through that website. 10-ER-2293–94, 2361–2362. Further, at trial, Atari submitted evidence of Redbubble's extensive role in the

process of creating and distributing these counterfeit products sold on www.redbubble.com:

Redbubble's former Chief Supply Chain Officer, Arnaud Deshais, testified that Redbubble, and not its users, pays Redbubble's third-party fulfillers to acquire blank materials and affix designs to those materials (10-ER-2258), and makes available to its users a portfolio of blank products onto which its users can elect to place their designs. 10-ER-2259. Mr. Deshais further testified that after Redbubble's users upload their design of choice and select the types of blank products on which that design can be purchased by Redbubble's customers, Redbubble's users have no material involvement in the sale of a product through Redbubble's website. 10-ER-2260. At this time, prior to an order being placed, no physical product exists. 10-ER-2261–2262. The buyer pays Redbubble, not the Redbubble user who uploaded the design. 10-ER-2262. Redbubble also arranges and pays for product creation, including the placing of a Redbubble tag on the product, and shipment to the buyer, and handles customer service issues. 10-ER-2262–2268. This record was substantially similar to that presented on summary judgment.

However, the record at trial did offer further development as to the massive amount of counterfeit sales made on Redbubble's website, and Redbubble's knowledge of the same. In this regard, Redbubble's Deputy General Counsel, James Toy, testified that, between March of 2017 and March of 2021, Redbubble received 186,222 takedown notices from rights holders. 10-ER-2284. Mr. Toy further testified that the specifically-identified products removed from Redbubble's website pursuant to those takedown notices had 14.6 million historical sales. 10-ER-2285.

Redbubble also again confirmed its policy of doing nothing to look for infringements on its website unless Redbubble first receives a complaint from the rights holder. Jenny Greenhough, Redbubble's former Head of Marketplace Integrity, testified as follows:

> Q. And your general practice was not to look unless you got a complaint.

> A. Correct.

10-ER-2281.

**D.** **Called to make a policy determination as to whether Redbubble should be liable, the jury found in Redbubble's favor.**

Having been deprived of important evidence, being erroneously instructed that they must determine whether Redbubble is the true seller, and being provided no instruction whatsoever how to do so, the jury held that Redbubble was not liable for direct infringement. 2-ER-63. Atari appeals the jury instructions and evidentiary rulings underlying that result, in addition to the district court's rulings on willful blindness at summary judgment, going to Atari's contributory trademark counterfeiting and willful infringement claims.

## STANDARD OF REVIEW

**Summary judgment.** The district court's rulings on summary judgment are reviewed de novo. *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whe[n] he is ruling on a motion for summary judgment. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

This Court "must reverse summary judgment if genuine issues of material fact remain such that [Redbubble] is not entitled to judgment as a matter of law." *Interstellar Starship Servs.*, 184 F.3d at 1109.

**Jury instructions.** "[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005) (internal quotation omitted). Parties are entitled to an instruction on their "theory of the case if it is supported by law and has foundation in the evidence." *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009) (internal quotation omitted). It is thus error for a district court to "reject[] proposed jury instructions that are properly supported by the law and the evidence[.]" *Id.*

The Court reviews the legal accuracy of jury instructions de novo. *Clem*, 566 F.3d at 1180–81. "An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." *Dang*, 422 F.3d at 811 (internal quotation omitted). Where a misstatement of the law occurs, prejudice is presumed, and the burden is on Redbubble to demonstrate the jury would have reached the same decision if properly instructed. *Id.*

**Evidentiary rulings.** The district court's evidentiary rulings are reviewed for an abuse of discretion. *Engquist v. Oregon Dep't of Agriculture*, 478 F.3d 985, 1008 (9th Cir. 2007). However, where an error is demonstrated, reversal is required if that error "more probably than not tainted the verdict." *Id.* at 1009; *see also Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991) (reversing and remanding for new trial where district court excluded evidence probative on key issue in case).

## SUMMARY OF THE ARGUMENT

The district court made several errors warranting reversal of the judgment entered below and a new trial.

***First***, the district court erred by holding Redbubble does not engage in willful blindness as a matter of law, despite significant evidence to the contrary. Atari presented evidence that, among other things, infringement of well-known brands is widespread on Redbubble's website, Redbubble received thousands upon thousands of takedown notices from rights holders, including one from Atari, Redbubble was sued and held liable for infringement on multiple

occasions, and conducted internal studies showing that 24% of the products sold on Redbubble are inauthentic.

Redbubble took no affirmative or proactive steps to address its infringement problem. Redbubble in fact instituted a policy of *not* looking for infringements unless Redbubble first received a complaint from the rights holder, and even after being sued by Atari, Atari continued to locate obvious infringements of its intellectual property until trial neared. Redbubble pats its own back for processing takedown notices, but Redbubble takes longer than other similar websites to do so (24–48 hours vs. six days), and fails to suspend users engaging in infringement, in some instances allowing more than 30 violations. Redbubble also refuses to disable use of well-known trademarks as search keywords—the combination of this behavior leading Atari's expert to opine that Redbubble is "one of the worst violators when it comes to policing their marketplace for intellectual property infringements when compared to other print-on-demand sites." 9-ER-1913, ¶ 25.

This is more than enough evidence for a reasonable jury to find Redbubble engaged in willful blindness, particularly when considering

controlling precedent indicating that summary judgment is generally inappropriate when considering issues of willfulness. *Friedman*, 833 F.3d at 1186.

**Second**, the district court refused to make a finding as a matter of law as to whether Redbubble engages in trademark use, despite the facts on this issue being undisputed. The parties agreed throughout the case that Redbubble users upload the designs available to be printed on merchandise, but Redbubble does everything else. That is, Redbubble hosts the product listing pages on its website, accepts and promises to fulfill orders, processes the customers' payments (*i.e.*, takes the money), hires a third party to manufacture the products when ordered, provides Redbubble-branded bags and tags for the products, arranges for shipment of the products, and handles all customer service, including returns.

Despite this mountain of undisputed evidence demonstrating that Redbubble used the Atari Marks by virtue of its control over every step of the distribution chain, and despite the district court finding that it is Redbubble that enters into sales contracts with customers who make a purchase on www.redbubble.com, the district court wrongfully punted

the issue of whether Redbubble engages in trademark use to the jury. *Cf. SunFrog*, 311 F. Supp. 3d at 1023, 1050.

***Third***, the district court erroneously instructed the jury on trademark use, limiting the concept of trademark use to selling or advertising, and stating that no amount of facilitation of those sales can give rise to direct liability. This violated both the plain language of the Lanham Act, which makes actionable "use in commerce" of an infringing or counterfeit mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services[,]" 15 U.S.C. §1114 (1)(a), and numerous cases holding directly liable members in the distribution chain other than sellers. *See, e.g., JUUL Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041, 1052 (C.D. Cal. 2021) (collecting cases). This mistake was particularly prejudicial because Atari presented evidence that Redbubble coordinates every step in the distribution chain, including the manufacturing and shipment of the infringing goods.

***Fourth***, despite requiring Atari to prove that Redbubble is the seller of products sold on its website, the district court refused to give any instruction as to what makes a seller under the Lanham Act. Combined with the above-described instructional error, this essentially

left the jury to decide who they felt was *more* liable for the infringements occurring on Redbubble's website, between Redbubble or its users.

Atari showed, and the district court agreed on summary judgment, that the Redbubble "customer forms a contract with Redbubble, not the artist." 2-ER-40. However, the jury was not instructed that this would make Redbubble the seller. As prophetically noted by the district court during the hearing on motions in limine, tasking the jury with deciding who is a seller without any instruction how to make that determination was "a recipe for legal error." 10-ER-2419. But that is exactly what the district court did.

***Fifth***, the district court wrongfully excluded from trial Redbubble's own admissions that it acts as a seller for tax and accounting purposes. This aggravated the district court's error in refusing to instruct the jury on how to determine whether Redbubble acted as a seller, eliminating from the jury's consideration what Redbubble itself believed to be its role in the purchases made on its website, prior to this lawsuit.

This Court should find that Redbubble used the Atari Marks as a matter of law, and remand for a new trial on Redbubble's willfulness and damages. Alternatively, the Court should remand for a new trial on Redbubble's liability, where Atari can pursue claims of direct and contributory trademark counterfeiting, and a finding that Redbubble's infringement is willful, because Redbubble engages in willful blindness.

## ARGUMENT

## I. The Court Erroneously Granted Summary Judgment on the Issue of Willful Blindness, Disallowing Atari's Operative Theory of Contributory Infringement and Willfulness Claims.

### A. Legal standard.

Summary judgment is particularly disfavored when considering issues concerning the defendant's state of mind, like willful blindness. *See Friedman*, 833 F.3d at 1186 ("Indeed, as the district court noted, Live Nation was not able to cite *any* 'cases in which a court has granted summary judgment in favor of a defendant on the issue of willfulness.'") (emphasis in original).

### B. Analysis.

Failing to heed this standard—providing little analysis of Atari's evidence—the district court summarily ruled that Atari's evidence

failed to amount to willful blindness as a matter of law. 1-ER-22–23, 56–57. This erroneous ruling ignored compelling evidence of willful blindness, and undercut Atari's theory of contributory liability.

To be clear, Atari's contributory infringement claim against Redbubble was premised on the argument that Redbubble is willfully blind to infringements. Willful blindness of infringement is sufficient to establish contributory liability for the same. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013); *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 255 (2d Cir. 2021) (affirming use of willful blindness instruction for contributory infringement claims against landlord housing Canal Street vendors); *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013) (liability for contributory infringement cannot be avoided by engaging "ostrich-like practices" designed to avoid gaining actual knowledge of infringement); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 109 (2d Cir. 2010) ("A service provider is not, we think, permitted willful blindness.").

To show that Redbubble was willfully blind, and thus liable on a contributory infringement theory, Atari was required to demonstrate that Redbubble "(1) subjectively believed that infringement was likely

occurring on their networks and that they (2) took deliberate actions to avoid learning about the infringement." *Luvdarts*, 710 F.3d at 1073 (quoting *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)); *see also Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996) ("[A] swap meet can not disregard its vendors' blatant trademark infringements with impunity"). The *Omega SA* court explained:

> [W]here a defendant knows or should know of infringement, whether that defendant may be liable for contributory infringement turns on what the defendant does next. If it undertakes bona fide efforts to root out infringement, such as eBay did in *Tiffany*, that will support a verdict finding no liability, even if the defendant was not fully successful in stopping infringement. But if the defendant decides to take no or little action, it will support a verdict finding liability.

984 F.3d at 255.

Here, the evidence strongly supports a finding that Redbubble fails to take adequate steps to address its known infringement problem. At minimum, a reasonable jury could so hold, requiring reversal of the district court's grant of summary judgment on willful blindness. That reversal must allow Atari to try its contributory infringement claim, and pursue a finding of willfulness.

## 1. Redbubble subjectively believed that infringement was occurring on its website.

The district court rightly recognized that as to the level of knowledge required to trigger potential contributory liability, in the Ninth Circuit, Atari need not show Redbubble's actual knowledge of particular infringing items, but "only 'actual or constructive knowledge that the users of [defendants'] services were engaging in trademark infringement.'" 1-ER-46 (citing *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011)). While Redbubble argued below that *Tiffany* should lead to a different conclusion, even the Second Circuit has since clarified that no knowledge of particular infringements is required where that lack of knowledge results from willful blindness. *Omega SA*, 984 F.3d at 254 ("*Tiffany's* discussion of willful blindness confirms that a defendant may be held liable for contributory trademark infringement despite not knowing the identity of a specific vendor who was selling counterfeit goods, as long as the lack of knowledge was due to willful blindness.").

As to the amount of knowledge required to show that Redbubble has constructive knowledge its users are engaging in trademark infringement, *Omega SA* is instructive. In *Omega SA*, there was

evidence the defendant's property was the subject of prior infringement-related litigation, a letter was sent to the property owner regarding infringement on the property, and, on more than one occasion, counterfeit items were found on the property. 984 F.3d at 248–49. This evidence sufficiently supported a jury finding that the property owner was on notice of infringement occurring at the property. *Id.* at 254–55.

There was significantly more evidence on summary judgment that Redbubble is aware of ongoing infringement on its website. As discussed above, Redbubble has been sued and found liable for infringement on more than one occasion, received thousands upon thousands of takedown notices from rights holders—including one from Atari—alerting Redbubble to infringement on its site, Redbubble received customer inquiries concerning counterfeit Atari products offered for sale on their site, counterfeit items of any well-known brand one can think of have been found on Redbubble's website, and Redbubble itself conducted a study showing that approximately 24% of products on its

website are inauthentic or counterfeit. 3-ER-287–91, 337–40; 4-ER-540–41, 585–714; 5-ER-716–97; 8-ER-1774–1834; 9-ER-1912, ¶ 24.[4]

On these facts, a reasonable jury could certainly hold that Redbubble was on notice of the ongoing infringement on its website.

### 2. **Redbubble stuck its head in the sand instead of taking reasonable steps to avoid infringement.**

#### a. **Redbubble enacted a formal policy of not searching its website for infringements.**

Redbubble does *nothing* to look for infringements of well-known marks until it receives a takedown notice identifying particular infringements from the rights holder. 4-ER-505; 9-ER-1913, ¶ 27; 9-ER-1916, ¶ 37. Redbubble protests that it is too difficult to figure out whether any particular product is infringing, but the Ninth Circuit already rejected this alleged burden as an excuse to institute a policy of not looking. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017) ("Regardless of how difficult it may be to determine whether particular designs have been registered with the Copyright Office, a party may act recklessly by refusing, as a matter of policy, to

---

[4] This record was developed further at trial, with Redbubble testifying that it received 186,222 takedown notices in a four-year period. 10-ER-2284.

even investigate or attempt to determine whether particular designs are subject to copyright protections."); *see also Omega SA*, 984 F.3d at 249, 255 (finding failure to search the premises to support jury's finding of willful blindness).[5]

It should nonetheless be noted that the task of identifying copies of well-known marks is much easier than determining whether a fabric design is copyrighted. Would Redbubble seriously protest that had it searched for "atari", Redbubble could not identify these designs as infringing?

  

The district court erred in its consideration of this issue when it credited a self-serving declaration offered by a Redbubble in-house lawyer over competing contemporaneous evidence, flipping the

---

[5] To the extent Redbubble's self-serving declaration was inconsistent (Redbubble never avers it does anything to look for infringements of brands that have not yet complained), Atari's evidence should have been credited on summary judgment.

summary judgment standard on its head. Relying solely on that declaration, the district court simply took Redbubble's word that it engages in significant amounts of proactive policing: "Redbubble's evidence shows that it does significantly more . . . " 1-ER-47. But Redbubble's website acknowledges that even when Redbubble receives a takedown notice, "We generally don't go looking for similar works to remove from the marketplace." 9-ER-1913, ¶ 27. And, Atari submitted testimony from an expert witness that, "I have personally not witnessed any first hand 'proactive policing' by Redbubble in any instances." 9-ER-1916, ¶ 37.

Further illustrative of this point, until trial was near, Atari continued to locate obvious infringements of its intellectual property for sale on Redbubble's website. 2-ER-171–94; 3-ER-196–224. The district court discounted these infringements as unimportant because they purportedly "lack identifiable information that would have enabled identification of the counterfeiting." 1-ER-48. This was no barrier to Atari locating the products, nonetheless, at least one of the counterfeits was in fact tagged with "atari". 2-ER-173. That these products continued to be offered for sale on Redbubble's website through

summary judgment is strongly probative of the fact that Redbubble was not looking for them.

### b. Redbubble fails to take reasonable steps to stop infringement on its website.

Again, Redbubble refuses to look for infringements on its website unless it receives a complaint from a rights holder. This refusal to search forms the basis of Redbubble's failure to take reasonable steps to prevent infringement.

Further, Redbubble fails to suspend users from its website after receiving takedown notices indicating the users have uploaded infringing designs to Redbubble's website. 9-ER-1915–1916, ¶¶ 33–36. Atari submitted evidence that one user was permitted *34* violations, and that hundreds of other users were allowed multiple violations, without Redbubble taking disciplinary action. 9-ER-1916, ¶ 36. As held in *Omega SA* and *Coach*, this failure to promptly remove infringing users strongly supports a finding of willful blindness—being described by the *Coach* court as "ostrich-like practices." *Coach*, 717 F.3d at 505; *Omega SA*, 984 F.3d at 249, 255. Redbubble's willingness to permit its users so many infringement violations renders it the quintessential ostrich.

Moreover, contrary to the industry standard, Redbubble refuses to block the use of well-known brand names as tags for products allowing easy searching for infringing products:

> In my experience working with other print-on-demand sites and marketplaces, I have seen that once a violation is reported using a brand name, the site will not only proactively remove all other infringements, but they will block the search name and internal tag so that other designs cannot be uploaded using that brand name, nor can consumers search to find products using that brand or their intellectual property.

9-ER-1915, ¶ 32. The district court improperly interjected its own judgment to find Redbubble's refusal reasonable, but that Redbubble's competitors do institute key word bans to fight infringement shows a reasonable jury could reach the opposite conclusion.

Lastly, while Redbubble pats itself on the back for processing takedown notices, it takes much longer to do so than other print-on-demand companies—six days vs. 24–48 hours. 9-ER-1914, ¶¶ 30–31. A reasonable jury could draw the inference that Redbubble takes its time to remove products subject to takedown notices because Redbubble hopes to eke out a few extra sales before being forced to pull down well-performing products.

The above-described practices lead to one inescapable conclusion—
Redbubble's reaction to known counterfeiting is unreasonable. As
explained by an industry expert, "Redbubble is one of the worst
violators when it comes to policing their marketplace for intellectual
property infringements when compared to other print-on-demand sites."
9-ER-1913, ¶ 25. Certainly a reasonable jury could agree and find
Redbubble failed to take reasonable steps to stop infringement.

## C. Summary.

For the reasons set forth above, the district court erred in holding
that Redbubble is not willfully blind as a matter of law. Because that
ruling undercut Atari's theory of contributory infringement, and
consistent with the parties stipulation that Atari would not waive any
appellate rights by not presenting a contributory infringement theory at
trial, the Court should remand for trial on Atari's contributory
infringement claim. Atari must also be permitted to pursue a finding of
willfulness.

## II. The District Court Repeatedly Erred in Regard to Atari's Direct Infringement Claims.

Throughout this case, it was undisputed that some amount of
products printed with copies of the Atari Marks were offered for sale

and sold on Redbubble's website. 1-ER-33 ("Atari located 114 Atari marks, 18 Pong marks[.]"); 10-ER-2293–2294 (Redbubble argued in closing, "what we are left with here is . . . a bunch of uses of something that says Atari and has the Fuji, five instances of Pong, we agree about that."). The only issue in dispute was whether Redbubble itself used the marks in commerce sufficient to be liable for the infringement. The district court repeatedly erred when considering this issue.

### A. "Use in commerce" under the Lanham Act is broader than selling or offering for sale.

The language of the Lanham Act is broad, making actionable "use in commerce" of an infringing or counterfeit mark "*in connection with* the sale, offering for sale, distribution, or advertising of any goods or services[.]" 15 U.S.C. § 1114 (1)(a) (emphasis added); *see also* § 1125(a)(1) (imposing liability for anyone who "uses in commerce" a false designation of origin "in connection with any goods or services"). While Congress could have simply outlawed the "the sale, offering for sale, distribution, or advertising" of infringing or counterfeit goods, it did not. Congress went further by making actionable *any use* in connection with these activities, necessarily implicating a broader scope of conduct. The leading treatise on trademark law explains:

> [T]he statutory definition of infringement
> includes any manufacturer, supplier, dealer,
> printer, publisher or broadcaster who uses the
> infringing mark in connection with "the sale,
> offering for sale, distribution or advertising of any
> goods or services[.]"

J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR

COMPETITION §25:26 (5th ed.).

As but one illustration, the Lanham Act contains what is known

as the innocent-printer defense, immunizing persons that print

infringing marks for others from damages, but not liability, so long as

they prove themselves to be an "innocent infringer or innocent

violator[.]" 15 U.S.C. § 1114 (2)(A). The inclusion of the innocent-printer

defense confirms that merely printing an infringing or counterfeit mark

is use in commerce sufficient to give rise to liability under the Lanham

Act, because the defense would otherwise be superfluous. *Nat'l Bus.*

*Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 n.7 (5th

Cir. 2012) ("The Lanham Act specifically contemplates liability for

printers in its limitation of remedies for innocent infringers[.]").

Consistent with the broad statutory definition of use in commerce,

courts routinely find parties directly liable for trademark infringement

where they merely coordinate manufacturing or shipment of the

infringing goods. *JUUL Labs*, 557 F. Supp. at 1052 (storage, shipment, and handling of infringing goods sufficient to find direct liability); *Nike, Inc. v. E. Ports Custom Brokers, Inc.*, No. 2:11-CV-4390-CCC-MF, 2018 WL 3472628, at *9 (D.N.J. July 19, 2018) (arranging for shipment of counterfeit goods sufficient to find direct liability); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 168 (E.D.N.Y. 2016) (coordinating the manufacturing and shipment of counterfeit products was sufficient to find direct liability); *Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc.*, No. CV 08-0068 (KAM) (JO), 2010 WL 2133937, at *5 (E.D.N.Y. Mar. 11, 2010) (defendant "used the counterfeit marks in commerce by arranging for their transport into the United States"); *Philip Morris USA, Inc. v. Lee*, 481 F. Supp. 2d 742, 748 (W.D. Tex. 2006) (arranging for importation of counterfeit products sufficient to find direct liability).

Indeed, even more amorphous use of trademarks—for instance, as search keywords or to draw customers to a website—has been held to constitute trademark use. *See, e.g., Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144–45 (9th Cir. 2011) (use of a mark as a search engine keyword is use in commerce);

*Transamerica Corp. v. Moniker Online Servs., LLC*, 672 F. Supp. 2d 1353, 1362 (S.D. Fla. 2009) (use of marks in the registration of website domains is use in commerce); *N. Amer. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218–19 (11th Cir. 2008) (use of marks in a website's meta tags is use in commerce).

Moreover, where third-party users provide the infringing or counterfeit marks, courts have still recognized that print-on-demand companies can engage in trademark use by virtue of their involvement with the sales process. *Ohio State University v. Redbubble, Inc.*, 989 F.3d 435, 448 (6th Cir. 2021) (acknowledging Redbubble's argument that it works with third-party sellers, but still reversing summary judgment in Redbubble's favor because Redbubble's involvement in the sales process could constitute trademark use); *SunFrog*, 311 F. Supp. 3d at 1023 (similar platform to Redbubble was a "fairly straightforward case of counterfeiting"); *Born to Rock Design Inc. v. CafePress.com, Inc.*, No. 10 Civ. 8588(CM), 2012 WL 3954518, at *5–6 (S.D.N.Y. Sep. 7, 2012) (holding print-on-demand business model results in "use in commerce").

In this regard, print-on-demand companies like Redbubble handle many parts of the distribution chain, and it is well-established that multiple members of the distribution chain may be liable for direct trademark infringement. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 834 (9th Cir. 2011) (affirming finding that multiple parties owning and operating the offending website were jointly and severally liable under the Lanham Act); *Adobe Sys. Inc. v. Blue Source Group, Inc.*, 125 F. Supp. 3d 945, 973 (N.D. Cal. 2015) ("[A]ny member of the distribution chain of allegedly infringing products can be jointly and severally liable for the alleged misconduct.") (citing *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distrib. Pty. Ltd.*, 647 F.2d 200, 207 (D.C. Cir.1981) (internal quotations omitted)).

### B.    <u>The district court should have granted Atari summary judgment on liability.</u>

There has never been any *factual* dispute concerning Redbubble's role in the sales made on its website. All parties agree that Redbubble's users upload a design to Redbubble's website, and then Redbubble does everything else:

- Redbubble places the design on its stock images to create a product listing page, hosted on Redbubble's website. *See, e.g.*, 9-ER-1882–95, 2020–44.

- When a customer places an order on www.redbubble.com, Redbubble takes their money, and promises to deliver the ordered product to the customer. 3-ER-480, 482; 9-ER-1997–98, ¶¶ 5, 7; 9-ER-2014–19 ("We're on it!").

- Redbubble follows up by e-mail to the customers with shipping confirmations. 9-ER-1997, ¶ 3; 9-ER-2002–10.

- Redbubble pays a third-party printer to manufacture the product. 3-ER-475–76.

- Redbubble provides the third-party printer with Redbubble bags and tags for the product. 3-ER-358, 483–85; 9-ER-1997–98, ¶¶ 4, 8; 9-ER-2011–13.

- Redbubble arranges for shipment of the product to the customer. 3-ER-475–77.

- Redbubble handles all customer service, including returns. 3-ER-475, 481, 485–486, 492.

Indeed, the district court acknowledged that by accepting and promising to fulfill the orders placed on www.redbubble.com, "the customer forms a contract with Redbubble, not the artist." 1-ER-40. Despite this acknowledgment, and despite there being no disputed facts for a jury to decide, the district court simply refused to make a finding as a matter of law and punted the issue to the jury: [W]hile there is something much more than 'no evidence' that Redbubble acts as a seller, Atari has not established that Redbubble is a seller as a matter of law." 1-ER-42.

However, it is the province of a jury to resolve disputed factual issues, not to answer complex legal questions such as whether a certain set of undisputed facts constitutes use in commerce under the Lanham Act and relevant case law. The district court should have made that determination as a matter of law.

And, to be clear, Atari was entitled to a determination that Redbubble uses the Atari Marks. As noted above, the district court rightfully held that Redbubble enters into the sales contracts whereby Redbubble agrees to deliver the infringing goods to its customers in exchange for payment. 1-ER-40. All agree that selling is use in

commerce under the Lanham Act, so how is a finding that it is Redbubble that enters into the sales contracts not sufficient to require a finding Redbubble used the Atari Marks in commerce? Particularly where it is undisputed that Redbubble also coordinates manufacturing and shipment of the infringing goods.

Redbubble's role in this process was undisputed on summary judgment (and was again undisputed at trial), and this Court should make a finding as a matter of law that Redbubble used the Atari Marks in commerce.[6]

## C. <u>The district court materially misstated the law when instructing the jury.</u>

The district court misstated the elements for a claim of trademark infringement, and refused to instruct the jury on one of Atari's key theories of the case, that Redbubble enters into sales contracts with its customers. These errors were prejudicial and require reversal and a new trial.

---

[6] Atari was not required to move for judgment as a matter of law during trial to preserve this issue, because it is a pure question of law. *Banuelos v. Constr. Laborers' Tr. Funds for S. Cal.*, 382 F.3d 897, 902– 03 (9th Cir. 2004) (finding pure questions of law reviewable after trial even if only raised in a motion for summary judgment); *In re Bard IVC Filters Prod. Liab. Litig.*, 969 F.3d 1067, 1072 (9th Cir. 2020) (affirming *Banuelos*'s rule).

1. **The district court erred by limiting "use in commerce" under the Lanham Act to selling or advertising.**

Over Atari's objection, the district court modified Ninth Circuit

Model Civil Jury Instruction No. 15.6, which requires a plaintiff to

prove only that "the defendant used" the plaintiff's mark, by adding the

following language:

> You may find that Redbubble "used" the plaintiff's mark only if you find that Redbubble itself either: (1) was the seller of any infringing goods; (2) was the one offering any allegedly infringing goods for sale; or (3) advertised any allegedly infringing goods through advertisements that themselves infringed the plaintiff's trademarks. If you find that Redbubble's role was instead to act as an intermediary, or as a facilitator of sales made by others, you may not find that Redbubble "used" the plaintiff's mark.

1-ER-7.

This instruction improperly narrowed trademark "use" to selling

or advertising, wrongly required the jury to make a decision between

Redbubble and its users as to who is the seller—the one true seller

requirement—and then instructed that if Redbubble's users are the

seller, Redbubble itself cannot be directly liable. This erroneously

foreclosed the possibility that more than one party in the Redbubble distribution chain can engage in trademark use.

As discussed above, the plain language of the Lanham Act is not so restrictive, and courts routinely hold that several types of conduct that merely "facilitate" sales are themselves use in commerce. Manufacturing (*Innovation Ventures*). Shipping (*Nike*, *Phillip Morris USA*). Storage (*JUUL Labs*). Indeed, each member of the distribution chain can be directly liable for trademark infringement (*TrafficSchool.com*, *Adobe Sys*). Similarly, the print-on-demand cases show that involvement throughout the distribution chain can equal trademark use, even where a third-party user uploads the infringing design and is held to be the seller (*Ohio State*).

Lest there be any question whether this mistake was prejudicial, it was undisputed at trial that Redbubble engages in several types of conduct in connection with the sales made on its website, including coordinating the manufacturing and shipment of the products ordered on www.redbbuble.com. *See* 10-ER-2258–68. Not to mention that Redbubble also processes the payments, places the products in Redbubble bags with Redbubble tags, and handles all the customer

service issues. 10-ER-2262, 2267–68. But the jury was instructed that it simply could not consider evidence of this "facilitating" conduct so long as the jury believed Redbubble's users acted more like a seller than Redbubble. This highly prejudicial error requires reversal.

### 2.     The district court erred by refusing to instruct the jury on what it means to be a seller.

Because selling an infringing product is indisputably use in commerce, and Redbubble proposed the modified version of Model Civil Jury Instruction No. 15.6 quoted above, Atari requested the district court provide the jury an instruction explaining what it means to be a seller under the applicable law:

> Atari alleges the buyer of an item on Redbubble's website forms a contract for a sale with Redbubble when the buyer orders an item on Redbubble's website. A person who contracts with a buyer to deliver title of a product is the seller of that product.

2-ER-75–81. This proposed instruction summarized the district court's analysis on summary judgment, 1-ER-40, and U.C.C. § 2-105(2), providing that, "A purported present sale of future goods or of any interest therein operates as a contract to sell."

The district court refused to give such an instruction, not because it expressed any disagreement with Atari's proposed instruction, but

because the district court did not want to make a ruling "based on nonoverlapping legal references the night before finalizing the instructions[.]" 10-ER-2288–2289.

The irony of the district court's refusal to instruct the jury is that if the meaning of "sale" is too complicated an issue for an experienced, well-regarded district judge to decipher with the help of experienced counsel for two sophisticated parties, how is the jury to know the meaning of the term without any instruction? In ruling on whether Atari could introduce evidence at trial that Redbubble treats itself as a seller for tax purposes, the district court provided commentary that is insightful here:

> [I]f the jury were allowed to decide the question, Atari gives no indication of how it could go about doing so. While the word sale does appear a single time in the parties proposed modified version of Ninth Circuit Model Instruction 17.2 . . . the proposed jury instructions provide no guidance as to how the jury should determine whether a seller for tax purposes is a seller for copyright purposes. *Allowing a jury to make that determination based on nothing more than lawyer argument strikes the Court as a recipe for legal error.*

1-ER-16 (emphasis added). The district court here acknowledges that simply allowing lawyers to argue about who should be deemed a seller,

without the benefit of any jury instructions to guide the inquiry, is likely to result in error. Atari agrees.

Nevertheless, that is exactly the exercise the district court tasked the parties and the jury with at trial. This was particularly prejudicial where the district court itself previously ruled that, "Atari's evidence shows that the customer forms a contract with Redbubble, not the artist." 1-ER-40. The jury should have been instructed that entering into such a sales contract renders Redbubble a seller.

### D. The district court improperly excluded key evidence of Redbubble's role as seller.

Further aggravating the district court's errors in the jury instructions, the district court excluded Redbubble's own admissions that it acts as a seller. Again, Redbubble's annual reports admits that Redbubble remits sales tax to the State of California as a seller of goods, and treats itself as the principal of sales transactions for accounting purposes. 4-ER-502; 4-ER-542; 7-ER-1560.

While Atari believes Redbubble's role as seller can be determined as a matter of law, certainly if the jury was tasked with determining whether Redbubble is a seller, Redbubble's own statements on the topic must be probative. In other words, how can the district court be

concerned about differences in the legal definition of a seller for tax purposes vs. under the Lanham Act, but refuse to instruct the jury on either?

Should this Court remand for a new trial on Redbubble's direct liability, Atari should be allowed to present Redbubble's admissions that it acts as a seller to the jury.

### E. Summary.

After Redbubble's users upload a design, Redbubble does everything else. It takes orders for infringing products, and coordinates the manufacturing and shipment of those infringing products. None of this is disputed, and the district court should have held on summary judgment that Redbubble used the Atari Marks as a matter of law. Nonetheless, when presenting the issue to the jury, the district court misstated the law by telling the jury only a seller uses a trademark in commerce, and that only one person can be held directly liable. The district court erred again by refusing to instruct the jury how to determine who is a seller under the Lanham Act, and by excluding Redbubble's own admissions it acts as a seller for tax and accounting

purposes. Each of these errors independently requires reversal, but when combined, there is simply no way the jury's verdict can stand.

## CONCLUSION

For the reasons set forth above, Atari is entitled to a new trial. If this Court finds Redbubble used the Atari Marks in commerce as a matter of law, that new trial need only determine whether Redbubble acted willfully and damages. If the Court does not so find, Atari must still be allowed to present its direct and contributory trademark counterfeiting claims to a jury (and present the wrongfully excluded evidence), and seek a finding of willfulness.

Dated: June 27, 2022      Respectfully submitted,

                        ELLIS GEORGE CIPOLLONE
                        O'BRIEN ANNAGUEY LLP
                            Keith J. Wesley
                            Christopher W. Arledge
                            Matthew L. Venezia
                            George B. A. Laiolo

                        By:   */s/Matthew L. Venezia*
                            Matthew L. Venezia
                        Attorneys for Plaintiff-Appellant
                      Atari Interactive, Inc.

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a) AND NINTH CIRCUIT RULE 32-1

Pursuant to F.R.A.P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached **Appellant's Opening Brief** is proportionately spaced, has a typeface of 14 points or more and contains 10,427 words, including footnotes. Counsel relies on the word count of the computer program used to prepare this brief.

Dated: June 27, 2022        Respectfully submitted,

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
    Keith J. Wesley
    Christopher W. Arledge
    Matthew L. Venezia
    George B. A. Laiolo


By:   */s/Matthew L. Venezia*
      Matthew L. Venezia
Attorneys for Plaintiff-Appellant
Atari Interactive, Inc.

## STATEMENT OF RELATED CASES

Appellant is aware of no related case to disclose pursuant to Ninth

Circuit Rule 28-2.6.

Dated:  June 27, 2022          Respectfully submitted,

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
    Keith J. Wesley
    Christopher W. Arledge
    Matthew L. Venezia
    George B. A. Laiolo


By:   */s/Matthew L. Venezia*
          Matthew L. Venezia
Attorneys for Plaintiff-Appellant
Atari Interactive, Inc.

# ADDENDUM OF PERTINENT STATUTES

# ADDENDUM OF PERTINENT STATUTES
## (NINTH CIRCUIT RULE 28-2.7)

15 U.S.C. § 1114 (excerpts) ................................................................. Add.1

15 U.S.C. § 1125 (excerpts) ................................................................. Add.2

## 15 U.S.C.A. § 1114. Remedies; infringement; innocent infringement by printers and publishers

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

. . .

(2) Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows:

(A) Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing.

## 15 U.S.C. § 1125. False designations of origin, false descriptions, and dilution forbidden

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

# CERTIFICATE OF SERVICE AND CM/ECF FILING

*U.S. Court of Appeals Case No. 21-17062*

I hereby certify that I electronically filed the foregoing

**APPELLANT'S OPENING BRIEF** with the Clerk of the Court

for the United States Court of Appeals for the Ninth Circuit by

using the appellate CM/ECF system on June 27, 2022.

I further certify that all participants in the case are

registered CM/ECF users and that service will be accomplished by

the appellate CM/ECF system.

*/s/ Matthew L. Venezia*
Matthew L. Venezia