No. 21-17062

# In the United States Court of Appeals
# for the Ninth Circuit

---

ATARI INTERACTIVE, INC.
*Plaintiff-Appellant*

v.

REDBUBBLE, INC.,
*Defendant-Appellant.*

---

*On Appeal from the U.S. District Court for the Northern District of California*
*Civil Action No. 18-3451*
*The Honorable Jon S. Tigar, J.*

---

## PETITION FOR PANEL REHEARING
## OR REHEARING EN BANC

---

Keith J. Wesley
Matthew L. Venezia
ELLIS GEORGE CIPOLLONE
  O'BRIEN LLP
2121 Ave. of the Stars, Suite 3000
Los Angeles, CA   90067
(310) 274-7100

George B. A. Laiolo
ELLIS GEORGE CIPOLLONE
  O'BRIEN LLP
44 Montgomery Street, Suite 1280
San Francisco, CA   94104
(415) 391-7100

Christopher Landau
ELLIS GEORGE CIPOLLONE
  O'BRIEN LLP
1155 F Street, N.W., Suite 750
Washington, DC   20004
(202) 249-6900
*clandau@egcfirm.com*

August 21, 2023

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, petitioner Atari Interactive, Inc. certifies that Atari SA (France) is its parent corporation and that no publicly held corporation owns 10% or more of its stock.

# RULE 35 CERTIFICATE OF COUNSEL

This case is the companion to *Y.Y.G.M. SA d/b/a Brandy Melville v. Redbubble, Inc.*, 9th Cir. Nos. 21-56150 & 21-56236 (*Brandy Melville*), (petition for rehearing or rehearing en banc filed Aug. 21, 2023), in which the same panel held that a plaintiff seeking to establish "willful blindness" in the context of contributory trademark infringement must invariably prove that the defendant had *actual* knowledge of specific instances of infringement or infringers. *See Brandy Melville* Op. 13. The panel applied that rule in this case to affirm the grant of summary judgment in Redbubble's favor. *See* Op. (Tab A), at 2-3.

For the reasons set forth in the rehearing petition in *Brandy Melville*, I express a belief, based on a reasoned and studied professional judgment, that the panel's decision in this case conflicts with this Court's prior decisions in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996), and *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 942-43 (9th Cir. 2011), as well as the decisions of every other circuit to address the issue, all of which hold that actual knowledge of infringement is *not* necessary to prove willful blindness in this context, *see, e.g.*, *Omega SA v. 375 Canal, LLC*, 984 F.3d 244, 254-55 (2d Cir.

2021); *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1312 (11th Cir. 2019); *1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1253-54 (10th Cir. 2013); *Coach, Inc. v. Goodfellow,* 717 F.3d 498, 503-05 (6th Cir. 2013); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992). Because this is a recurring issue of exceptional importance to the protection of intellectual property, consideration by the full court is warranted to secure and maintain uniformity of decisions.

Christopher Landau

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................i

RULE 35 CERTIFICATE OF COUNSEL...................................................ii

TABLE OF AUTHORITIES .....................................................................v

INTRODUCTION......................................................................................1

BACKGROUND ........................................................................................1

ARGUMENT ...........................................................................................12

Rehearing Is Warranted Because The Panel Decision Effectively
Wipes Willful Blindness Off The Books, Conflicts With Decisions
Of Other Circuits, And Would Render This Circuit A Den Of
Trademark Iniquity. ...........................................................................12

CONCLUSION ........................................................................................15

CERTIFICATE OF COMPLIANCE........................................................16

CERTIFICATE OF SERVICE.................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800-Contacts, Inc. v. Lens.com, Inc.*,
  722 F.3d 1229 (10th Cir. 2013).............................................................iii

*Coach, Inc. v. Goodfellow*,
  717 F.3d 498 (6th Cir. 2013)................................................................iii

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996).................................................................ii

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
  955 F.2d 1143 (7th Cir. 1992)..............................................................iii

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  658 F.3d 936 (9th Cir. 2011)...........................................................ii, 8

*Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*,
  932 F.3d 1303 (11th Cir. 2019)......................................................iii, 13

*Omega SA v. 375 Canal, LLC*,
  984 F.3d 244 (2d Cir. 2021) ...........................................................ii, 13

*Tiffany (NJ) Inc. v. eBay Inc.*,
  600 F.3d 93 (2d Cir. 2010) .............................................................8, 10

*Y.Y.G.M. SA d/b/a Brandy Melville v. Redbubble, Inc.*,
  9th Cir. Nos. 21-56150 & 21-56236 (*Brandy Melville*)
  (petition for rehearing or rehearing en banc filed Aug. 21,
  2023)...............................................................................ii, 1, 10, 12, 13

**Statutes**

15 U.S.C. § 1127 .....................................................................................4

## INTRODUCTION

This case underscores the bite of the panel's decision in the companion case of *Y.Y.G.M. SA d/b/a Brandy Melville v. Redbubble, Inc.*, 9th Cir. Nos. 21-56150 & 21-56236 (*Brandy Melville*), in which the plaintiff has concurrently filed a petition for panel rehearing or rehearing en banc. The panel applied the rule of law announced in that case to affirm the grant of summary judgment in this case. *See* Op. (Tab A), at 2-3. Plaintiff Atari respectfully requests panel rehearing or rehearing en banc in the event that such rehearing is granted in *Brandy Melville* to ensure that it obtains the benefit of any relief granted in that case.

## BACKGROUND

The facts here are virtually identical to those set forth in the *Brandy Melville* petition for rehearing, as the only meaningful difference between the cases is the plaintiff's identity. (The same law firms represented the plaintiffs and the defendant in both cases.)

Atari is an iconic brand that pioneered video games, and now owns a number of federally registered marks, including (1) the Atari mark (also known as the "Fuji," for its resemblance to Mount Fuji), USPTO Registration No. 4,214,210:



and the (2) the Pong mark, USPTO Registration No. 4,324,638:

# PONG

10-ER-2299-300. The Atari mark is registered for use on "printed matter" (including "posters" and "stickers"), and "articles of clothing, namely T-shirts, sweat shirts, [and] hats." 10-ER-2299. The Pong mark (which consists of "characters without claim to any particular font, style, size, or color") is also registered for use on "printed matter" (including "stickers" and "articles of clothing, namely-T-shirts, sweat shirts [and] hats." 10-ER-2300.

Redbubble's "artists" uploaded Atari's registered marks to Redbubble's website, where Redbubble's customers could peruse a vast array of knockoff Atari merchandise:

2

  

  

  

10-ER-2149-2256 (Tab B). Needless to say, none of this merchandise was authorized or licensed by Atari, and Atari did not receive a penny from any sale. That did not sit well with Atari, which counts these trademarks among its most valuable assets. 9-ER-2047.

3

Accordingly, Atari filed this lawsuit against Redbubble in June 2018, alleging (among other things) contributory trademark infringement. *See* 9-ER-2045-60 (complaint). In particular, the complaint alleged that "Redbubble has remained willfully blind to the infringement and/or counterfeiting of Atari trademarks on its website and on the products it creates and distributes to the end consumer." 9-ER-2056. (Counterfeiting is a form of infringement where the infringer uses an *identical* mark, not just a *similar* mark. *See* 15 U.S.C. § 1127.)

The parties cross-moved for summary judgment on this issue. Atari's motion included images showing infringement of its marks on Redbubble's website *even after this lawsuit was filed, i.e.*, after Redbubble incontestably was on notice that Atari considered those designs infringing:



2-ER-172; *see generally* 2-ER-169-94; 3-ER-196-225 (Tab C) (screenshots

taken over two years *after* this lawsuit was filed).

Atari also submitted evidence that Redbubble's failure to address

this rampant infringement was no oversight, but a reflection of the

company's official policy. As Redbubble explained on its website: "It is

5

Redbubble's policy to remove infringing works in response to valid complaints under applicable law, but content is *only* removed when it has been specifically identified as infringing in a legally valid takedown notice. We generally don't go looking for similar words to remove from the marketplace." 9-ER-1913 (emphasis added). Indeed, Redbubble's in-house counsel, tasked with overseeing intellectual property matters, testified at a deposition that he had *never* reviewed the Redbubble website and seen a design he thought might be counterfeit. 4-ER-505-06.

In addition, Atari submitted an expert report opining that "Redbubble is one of the *worst* violators when it comes to policing [its] marketplace for intellectual property infringements when compared to other print-on-demand sites." 9-ER-1913 (emphasis added); *see generally* 9-ER-1903-16 (Expert Report of Jamie Goldberg Gerson) (Tab D). As that report explains, "[m]any of Redbubble's intellectual property violations are clear" insofar as "counterfeit objects incorporating exact copies of trademarks and copyrights are commonplace on the Redbubble platform." 9-ER-1913. And precisely because Redbubble does nothing to address the problem unless and until it is notified by a rights owner, "Redbubble's lack of proactivity when it comes to policing [its] own

6

marketplace is what makes [it] one of the most egregious websites for repeat violations." 9-ER-1913-14; *see also* 9-ER-1916 ("I have personally not witnessed any first hand 'proactive policing' by Redbubble in any instances.").

Even after a violation was reported, Redbubble still failed to take appropriate action, limiting itself to addressing only the specific reported violation. *See* 9-ER-1914 ("Even setting aside Redbubble's failure to proactively police its platform, at a minimum, it is industry standard that once a single report of a clear intellectual property violation is reported, the website should then proactively search and remove all additional similar infringements on [its] site in order to be compliant, in addition to disabling searches for the infringing material."). Redbubble refused to disable searches for brand names it knew or should have known were trademarked, thereby allowing customers to access infringing designs and create knockoffs on demand—even after rights owners asked that their brand names be disabled as search terms. *See* 9-ER-1915-16; *see also* 4-ER-514-16. And Redbubble's time to remove an infringing product lagged far behind peer companies (6 days vs. 24/48 hours). *See id.* Nor did Redbubble take effective steps to ban known infringers:

> The number of times that a seller on Redbubble had to be reported more than once, prior to account suspension, ranged from two to 34 unique reports to Redbubble. I found that 412 sellers were reported three or more times, and 195 sellers were reported four or more times. There were 125 sellers that were reported five or more times and 93 sellers reported six or more times.

9-ER-1916; *see also* 9-ER-1915 ("I have seen firsthand that Redbubble allows repeat violators and sellers to continuously post and sell products using the same trademarks and copyrights that were reported previously.").

The district court (Tigar, J.), however, granted Redbubble summary judgment on Atari's contributory infringement claim. As a threshold matter, the court rejected Redbubble's argument that Atari was required to prove, at a minimum, that Redbubble "had knowledge of 'specific instances of actual infringement.'" 1-ER-46 (quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107 (2d Cir. 2010)). As the court explained, "the Ninth Circuit requires only 'actual *or constructive* knowledge that the users of [defendants'] services were engaging in trademark infringement.'" *Id.* (quoting *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir. 2011)) (emphasis added). Thus, the court held that Atari could establish that Redbubble was liable for contributory

infringement even if Atari could not prove that Redbubble actually knew that the designs were infringing: "the balance of authorities suggests that contributory infringement could occur when a service provider fails to take reasonable steps to prevent infringement while having general knowledge that such infringement is taking place." 1-ER-47.

The district court, however, held *as a matter of law* that Redbubble took reasonable steps to address infringement on its site, *see* 1-ER-47-48—even though it was undisputed that Redbubble did *nothing* to prevent infringement on its site unless and until it was asked to remove an infringing design, *see* 9-ER-1913. In particular, the court rejected Atari's argument that "Redbubble fails to take any action to prevent infringement until after it receives notice from a rights holder, even though it has reason to know that widespread trademark infringement is occurring on its website." 1-ER-47. According to the court, "Redbubble's evidence shows that it does significantly more than that." *Id.* But the only evidence identified by the court (as Atari pointed out) involved action *after* Redbubble received notice from a trademark owner:

> Redbubble's Marketplace Integrity Team proactively screens for infringing content *based on information it receives from content owners.*

> The team searches Redbubble's site for potentially infringing listings using a list of terms that are related to words or images *provided by a content owner* ….

> Where *the content owner alleges infringement* on Redbubble's site generally but refuses to cooperate by identifying specific products, Redbubble attempts to screen based on its own judgment.

1-ER-48 (emphasis added; internal quotations omitted). In essence, the court bought into Redbubble's efforts to saddle trademark owners with primary responsibility for trademark enforcement on its own website: "*Given that use of trademarked content is difficult to detect without input from the trademark owners*, Atari fails to show that Redbubble's process is unreasonable." *Id.* (emphasis added).

A panel of this Court affirmed. Applying its decision in the companion *Brandy Melville* case, the panel announced that "[t]o show that Redbubble was willfully blind, Atari must produce evidence that Redbubble had 'specific knowledge of infringers or instances of infringement.'" Op. 2 (quoting *Brandy Melville* Op. 10). "General knowledge of infringement on the defendant's platform—*even of the plaintiff's trademarks*—is not enough to show willful blindness." *Id.* (quoting *Brandy Melville* Op. 10; emphasis added) Although, as noted

above, the record includes *over one hundred of pages of screenshots* showing Atari's marks on Redbubble's website, *see, e.g.*, 10-ER-2148-256 (Tab B)—including many screenshots taken two years *after* this lawsuit was filed, *see* 2-ER-169-94; 3-ER-196-225 (Tab C)—the panel declared (without record citation) that "[m]ost of the evidence Atari relies on to show that Redbubble was willfully blind is evidence of general infringement on Redbubble's website, not specific instances of users infringing Atari's marks." Op. 2. "This general evidence is no basis for showing that Redbubble was willfully blind." *Id.* at 2-3.

And the panel did not stop there. Even if Redbubble *had* known of specific instances of infringement of Atari's marks, it held, "Redbubble's response was reasonable." Op. 3. The panel did not address Atari's evidence that Redbubble continued to allow users to print its trademarks on products even *after* the complaint in this case was filed. *See, e.g.*, 2-ER-169-94; 3-ER-196-225 (Tab C). Instead, the panel harkened back to a situation where, in 2011, Atari notified Redbubble that the designs of a specific "artist" were infringing, and Redbubble removed those designs. *See* Op. 3. The panel did not address any of Atari's other evidence regarding Redbubble's failure to take reasonable steps to prevent

infringement, including disabling the ability to search for brand names in its search bar (which Redbubble subsequently implemented of its own accord after the jury verdict in the *Brandy Melville* case).

This petition follows.

## ARGUMENT

### Rehearing Is Warranted Because The Panel Decision Effectively Wipes Willful Blindness Off The Books, Conflicts With Decisions Of Other Circuits, And Would Render This Circuit A Den Of Trademark Iniquity.

Rehearing is warranted here for all the reasons explained in the companion *Brandy Melville* petition: the panel decision (1) effectively wipes "willful blindness" off the books by conflating it with actual knowledge, (2) conflicts with prior rulings of this Court and every other circuit to consider the issue, and (3) creates all the wrong policy incentives by immunizing contributory trademark infringers from liability unless and until the trademark owner notifies them of such infringement, and even then limiting the contributory infringer's duty to remedying only the specific infringement identified by the trademark owner.

If the facts here fail—*as a matter of law*—to establish a claim for contributory trademark infringement, it is hard to imagine what facts would *ever* establish such a claim. Indeed, the record here includes over one hundred pages of screenshots of Atari's trademarks on Redbubble's website, *both before and after Atari filed this lawsuit.* *See* 10-ER-2148-2256 (Tab B) (before); 2-ER-169-94; 3-ER-196-225 (Tab C) (after). In addition, as noted above, the record here includes an expert opinion—highlighted in Atari's briefing but unmentioned by the panel—that "Redbubble is one of the *worst* violators when it comes to policing their marketplace for intellectual property infringements when compared to other print-on-demand sites." 9-ER-1913 (emphasis added).

The law need not be, and should not be, divorced from common sense: with infringement on this massive scale taking place on its website, it beggars belief to suppose that Redbubble was unaware of such infringement—unless, of course, Redbubble was willfully blind. *See, e.g.*, *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1315 (11th Cir. 2019) ("[E]vidence of serious and widespread infringement makes it more likely that a defendant knew about the infringement.") (internal quotation omitted). And, as explained in the *Brandy Melville*

13

petition, there was ample evidence that Redbubble was in fact aware that fully one-quarter of the designs on its site were infringing. *See, e.g.*, 4-ER-540-41.

Redbubble simply put its head in the sand and took the position that it had no duty to do *anything* unless and until a trademark holder asked it to remove *specific* infringing designs. *See* 9-ER-1913. But it is not generally the case that a person cannot be held liable for violating the law unless and until someone else specifically notifies that person that he or she is violating the law. Put differently, all of us have a responsibility to ensure that we are fulfilling our legal duties, and it is generally no defense to say that no one specifically informed us of those duties. There is no unfairness in imposing contributory trademark liability on a company that knows that fully one-quarter of its sales involve infringing designs, yet disclaims any proactive efforts to prevent such infringement.

Unfortunately, the panel decision has now enshrined Redbubble's extreme position as the law of this circuit. This Court should not allow that decision to stand.

## CONCLUSION

For the foregoing reasons, this Court should grant panel rehearing or rehearing en banc.

Respectfully submitted,

Keith J. Wesley
Matthew L. Venezia
ELLIS GEORGE CIPOLLONE
  O'BRIEN LLP
2121 Ave. of the Stars, Suite 3000
Los Angeles, CA  90067
(310) 274-7100

George B. A. Laiolo
ELLIS GEORGE CIPOLLONE
  O'BRIEN LLP
44 Montgomery Street, Suite 1280
San Francisco, CA  94104
(415) 391-7100

August 21, 2023

Christopher Landau
ELLIS GEORGE CIPOLLONE
  O'BRIEN LLP
1155 F Street, N.W., Suite 750
Washington, DC  20004
(202) 249-6900
_clandau@egcfirm.com_

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 32(a)(5), 32(a)(6), 35(b)(2)(A), and 40-1(a), I hereby certify that the foregoing brief is proportionately spaced using 14-point Century Schoolbook font and contains 2,241 words.

Christopher Landau

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 21, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Christopher Landau